## PEOPLE v BLACKWELL

1. RECEIVING STOLEN GOODS—ELEMENTS OF OFFENSE—STATUTES.

A conviction for the felony of receiving stolen property may not be sustained unless the prosecution has proven the following elements of the crime: (1) that the property was stolen and its value exceeded $100, (2) that the property was received by the defendant, (3) that the property was identical to that previously stolen, and (4) that the defendant received the property knowing that it was stolen (MCLA 750.535).

2. RECEIVING STOLEN GOODS—GUILTY KNOWLEDGE—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

A defendant's guilty knowledge that he received stolen goods need not be directly proved; the circumstances accompanying a transaction may justify an inference by the jury that the defendant believed, and had received the goods on the belief that, they were stolen; a conviction may rest on evidence which is purely circumstantial in nature.

3. RECEIVING STOLEN GOODS—GUILTY KNOWLEDGE—CONSTRUCTIVE KNOWLEDGE—INSTRUCTIONS TO JURY.

Instructing a jury in a trial for receiving stolen property that guilty knowledge means not only actual knowledge but "constructive knowledge", through notice of facts and circumstances from which guilty knowledge may fairly be inferred, was not reversible error where the court used "constructive knowledge" as a shorthand way of saying that this element may be proved circumstantially.

REFERENCES FOR POINTS IN HEADNOTES
[1] 66 Am Jur 2d, Receiving and Transporting Stolen Property §§ 3–10.
[2, 3] 66 Am Jur 2d, Receiving and Transporting Stolen Property § 25.
[4] 5 Am Jur 2d, Appeal and Error § 882.
[5] 66 Am Jur 2d, Receiving and Transporting Stolen Property §§ 19–31.
[6] 66 Am Jur 2d, Receiving and Transporting Stolen Property §§ 32, 33.

4. APPEAL AND ERROR—CRIMINAL LAW—EVIDENCE—JURY—REASONABLE DOUBT.

An appeal is not a retrial; the function of a reviewing court is to examine the record and to determine whether there was enough evidence presented by the prosecution to justify a jury verdict of guilty beyond a reasonable doubt.

5. RECEIVING STOLEN GOODS—EVIDENCE—JURY.

A defendant's conviction of receiving stolen goods was justified by the evidence where a policeman testified that while he was investigating a complaint concerning stolen property at the residence where the property was reported to be located, the defendant emerged, revealing the stolen property, and where there was direct, undisputed testimony indicating that the defendant knew the property was stolen at the time he took possession, and that he knew the identity of the individual who had stolen the property; any conflict in the testimony or questions of credibility were properly and finally determined by the jury.

6. CRIMINAL LAW—JURY—INSTRUCTIONS TO JURY—RECEIVING STOLEN GOODS.

Failure to *sua sponte* instruct the jury, in a trial for receiving stolen property, that the prosecution has the burden of refuting every reasonable theory consistent with a defendant's innocence was not reversible error where direct evidence on the issue of the defendant's guilty knowledge was presented at trial; the issue was not preserved for appellate review where there was no request at trial for the instruction and no objection was offered to its omission.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 April 9, 1975, at Grand Rapids. (Docket No. 19515.) Decided May 28, 1975.

Robert D. Blackwell, Jr., was convicted of receiving stolen property valued in excess of $100. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*John F. Lynch, Jr.,* for defendant.

Before: T. M. BURNS, P. J., and McGREGOR and
D. F. WALSH, JJ.

D. F. WALSH, J. The defendant was charged,
tried before a jury and convicted of receiving
stolen property valued in excess of $100, contrary
to MCLA 750.535; MSA 28.803. He was sentenced
to a term in prison of 2 to 5 years and appeals as
of right raising issues dealing with the court's
charge to the jury and the sufficiency of the evi-
dence. The facts will be developed as they relate to
the questions of law.

I.

*Whether it was reversible error for the trial
judge to instruct the jury that a finding of "con-
structive knowledge" would establish the element
of "guilty knowledge" required for a conviction for
receiving stolen property.*[1]

A conviction for the felony of receiving stolen
property may not be sustained unless the govern-
ment has proven the following elements of the
crime: (1) that the property was stolen and its
value exceeded $100, (2) that the property was
received by the defendant, (3) that the property
was identical to that previously stolen, (4) and that
the defendant received the property knowing that
it was stolen. MCLA 750.535; MSA 28.803, *People
v Keshishian,* 45 Mich App 51, 53; 205 NW2d 818

---

[1] The applicable statute is MCLA 750.535; MSA 28.803, and pro-
vides, in pertinent part:

"(1) A person who buys, receives, or aids in the concealment of any
stolen, embezzled, or converted money, goods, or property knowing
the same to have been stolen, embezzled, or converted, if the property
purchased, received, or concealed exceeds the value of $100.00, is
guilty of a felony, punishable by imprisonment for not more than 5
years, or by a fine of not more than $2,500.00, or both. * * * "

(1973), *People v Tantenella,* 212 Mich 614, 619; 180 NW 474 (1920).

When the trial judge instructed the jury on the elements of guilty knowledge, he employed language which has been approved in this state at least since 1920:[2]

"Guilty knowledge means not only actual knowledge, but, also constructive knowledge through notice of facts and circumstances from which guilty knowledge may be fairly inferred. Such knowledge must exist at the time of receiving the stolen property, or at the time the defendant aided in its concealment, and this is to be collected from all the various circumstances in the case.

"So I repeat: Guilty knowledge means not only actual knowledge but also constructive knowledge through notice of facts and circumstances from which guilty knowledge may be fairly inferred, such knowledge must exist at the time of receiving the property, at the time of aiding in the concealment of the property, and this is to be collected from all the various circumstances of the case."

It is defendant's claim that the reference to "constructive knowledge" was an improper statement of the law and deprived him of a fair trial. He argues that the arbitrary distinction between actual and constructive knowledge is a source of confusion, incompatible with the proof requirements of the statute and that it allows a conviction to rest on a quantum of proof which falls short of proof beyond a reasonable doubt.

The precise language of the instruction at issue seems to be a descendant of *People v Tantenella, supra,* where the sole issue was the sufficiency of the evidence relating to guilty knowledge. After a

---

[2] *See People v Tantenella,* 212 Mich 614, 621; 180 NW 474 (1920), and 4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 2270, p 2483, and § 2278, Form No. 990, p 2490.

complete discussion of the testimony which tended to prove this element of the crime, the Court, at 620, cited with approval the following quotation from *State v Gordon,* 105 Minn 217; 117 NW 483 (1908):

"Guilty knowledge on the part of the defendant was not directly proved. In the nature of things, that is ordinarily impossible; nor is it necessary. The circumstances accompanying the transaction may justify the inference by the jury that the prisoner believed, and had received the goods on belief that they were stolen. 2 Bishop, Crim Law, § 1138; 1 Wharton, Crim Law & Procedure, § 984; 24 Am & Eng Enc Law (2d ed), p 52."

That statement of the law is as true and accurate today as it was in the days of Messrs. Bishop and Wharton. And it is merely an alternate way of conveying the immutable truth that a conviction may indeed rest on evidence which is purely "circumstantial" in nature. *People v Ballenberger,* 51 Mich App 353, 356; 214 NW2d 742 (1974).

The *Tantenella* Court then stated, in its own words: "Guilty knowledge means not only actual knowledge, but constructive knowledge, through notice of facts and circumstances from which guilty knowledge may fairly be inferred." *People v Tantenella, supra,* at 621. We agree with defendant that the reference to constructive knowledge is needless and is probably an arbitrary distinction. But words are understood in a context; and although the term may convey a special meaning to lawyers, it is apparent that the *Tantenella* Court and the others[3] which have used the identical instructions since *Tantenella* used the term "con-

---

[3] *See, e.g., People v White,* 22 Mich App 65, 68; 176 NW2d 723 (1970), *People v Keshishian,* 45 Mich App 51, 53; 205 NW2d 818 (1973).

structive knowledge" as a shorthand way of saying that this element of the charge may be proven circumstantially. Use of this instruction is therefore not reversible error although the term "constructive knowledge" may more appropriately be deleted to avoid any possible confusion for future litigation on the issue.

Relative to this instruction defendant further maintains that guilty knowledge may not be "fairly inferred" from the circumstances of the receipt of the property because this notion is contrary to the concept of proof beyond a reasonable doubt. We find this argument unpersuasive, based on semantical hairsplitting and answered sufficiently in the above paragraph.

## II.

*Whether the evidence was sufficient to permit a jury finding of guilty knowledge.*

In treating this issue it must be understood that an appeal is not a retrial. Our function as a reviewing court is to examine the record and to determine whether there was enough evidence presented by the state to justify a jury verdict of guilty beyond a reasonable doubt. *People v Palmer,* 392 Mich 370, 376; 220 NW2d 393 (1974), *People v Ballenberger, supra.*

At trial the jury heard a Grand Rapids police detective testify that he had information on May 12, 1973, that a purple-colored Triumph motorcycle had been stolen on the previous day and that several people at 924 Underhill in Grand Rapids were seen hauling a cycle into the residence at that address. While the detective was discussing the matter with Mr. and Mrs. Hull, the occupants of the Underhill residence, the defendant emerged

from a bedroom and stated, "I have got it in here, they're not involved." With the bedroom door open the officer observed a purple motorcycle. The defendant was given the *Miranda* warnings. He then told the detective, referring to the Hulls, "They're not involved in the theft." The statement was corroborated by another police officer who remembered defendant's statement as "They don't have anything to do with stealing the bike. It is my thing, I will take care of it."

At trial neither of the Hulls remembered any mention of the word theft. Both testified that the cycle had been brought to their home by another individual because it was in need of mechanical repair and that it was brought inside to get it out of the way and to avoid exposure of the bike to rain.

Direct, undisputed testimony that defendant knew the bike was stolen at the time he took possession was offered by the detective. He indicated that on the morning of defendant's arraignment Blackwell revealed the identity of the individual who had stolen the motorcycle. Defendant did not testify and presented no witnesses on his own.

The evidence we have recounted is sufficient to justify a jury verdict of guilty beyond a reasonable doubt. *Cf. People v Tantenella, supra, People v Grandahl,* 16 Mich App 221; 167 NW2d 802 (1969), *People v Walker,* 25 Mich App 248; 181 NW2d 331 (1970). Any conflict in the testimony or questions of credibility were properly—and finally—determined in the jury room. *People v Ballenberger, supra,* at 356.

The final argument raised by defendant—as we understand it—is that since the state's case-in-chief was largely circumstantial, the trial court

was obliged—*sua sponte*—to instruct the jury that the state had the burden of refuting every reasonable theory consistent with his innocence. See *People v Parks,* 57 Mich App 738, 744; 226 NW2d 710 (1975). We decline to reverse on this ground for two reasons. First, direct evidence on the issue of guilty knowledge was presented at trial in the form of the defendant's own statements related by the detective and the other police officer. Secondly, the issue is not preserved for appellate review since there was no request for the trial court to so charge the jury, see MCLA 768.29; MSA 28.1052, *People v Levy,* 28 Mich App 339, 342–343; 184 NW2d 325 (1970), *cert den* 404 US 827; 92 S Ct 59; 30 L Ed 2d 55 (1971), and because no objection was offered by defendant to the omission of the proposed instruction. GCR 1963, 516.2, *People v Fry,* 55 Mich App 18, 27; 222 NW2d 14 (1974).

Accordingly, defendant's conviction is affirmed.